UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERLAN LYNELL DICEY,<br><br>    Plaintiff,<br><br>    v.<br><br>W. HANKS, et al.,<br><br>    Defendants. | No. 2:14-cv-2018 JAM AC P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' fully briefed motion for summary judgment.  ECF No. 30.

I.      Procedural History

Plaintiff filed his original complaint on August 25, 2014.  ECF No. 1.  Upon screening, the complaint was found to state claims against defendants Hanks, Betti, and Statti.  ECF No. 7. Defendants Hanks and Betti answered the complaint (ECF No. 14) while defendant Statti moved to dismiss for failure to state a claim (ECF No. 15).  Upon completion of briefing, defendant Statti's motion to dismiss was granted and defendant Statti was dismissed from the case.  ECF Nos. 29, 34.  After the undersigned recommended granting defendant Statti's motion to dismiss, and prior to the District Judge's adoption of the findings and recommendations, defendants Hanks, Betti, and Statti moved for summary judgment based on plaintiff's failure to exhaust his

1

administrative remedies. ECF No. 30. Because defendant Statti has already been dismissed, the motion for summary judgment as to the claims against defendant Statti will be denied as moot and the court will consider only the arguments as to the claims against defendants Hanks and Betti.

II.     Plaintiff's Allegations

Plaintiff alleges that on August 25, 2010, defendant Hanks threatened him with bodily harm while defendant Betti pointed a rifle at him. ECF No. 1 at 4-5. He alleges that Hanks and Betti's conduct was in retaliation for his filing of a group appeal. Id. at 7.

III.    Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such

a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

1  omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the
2  non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391
3  U.S. at 289).

4      On August 17, 2015, defendants served plaintiff with notice of the requirements for
5  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 30-1.
6  See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952,
7  960 (9th Cir. 1998) (movant may provide notice) (en banc).

8      IV.    Defendants' Motion for Summary Judgment

9      Defendants move for summary judgment on the grounds that plaintiff failed to exhaust his
10 administrative remedies prior to bringing suit as required by the Prison Litigation Reform Act, 42
11 U.S.C. § 1997e(a). ECF No. 30. In response, plaintiff argues that he attempted to exhaust his
12 administrative remedies, but that they were made unavailable to him when defendant Statti
13 improperly screened out his appeal as untimely and duplicative. ECF No. 38.

14     A.    Legal Standards for Exhaustion

15     Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are
16 subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Under the PLRA,
17 "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or
18 any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until
19 such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v.
20 Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners
21 seeking redress for prison circumstances or occurrences"). "The PLRA mandates that inmates
22 exhaust all available administrative remedies before filing 'any suit challenging prison
23 conditions,' including, but not limited to, suits under § 1983." Albino v. Baca, 747 F.3d 1162,
24 1171 (9th Cir. 2014) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

25     Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones
26 v. Bock, 549 U.S. 199, 204, 216 (2007). "[T]he defendant's burden is to prove that there was an
27 available administrative remedy, and that the prisoner did not exhaust that available remedy."
28 Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir.

1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, it must be "capable of use; at hand." Albino, 747 F.3d at 1171 (citations and internal quotations marks omitted).

In reviewing the evidence, the court will consider, among other things, "information provided to the prisoner concerning the operation of the grievance procedure." Brown, 422 F.3d at 937. Such evidence "informs our determination of whether relief was, as a practical matter, 'available.'" Id. Thus, misleading—or blatantly incorrect—instructions from prison officials on how to exhaust the appeal, especially when the instructions prevent exhaustion, can also excuse the prisoner's exhaustion:

> We have considered in several PLRA cases whether an administrative remedy was "available." In Nunez v. Duncan, 591 F.3d 1217 (9th Cir. 2010), we held that where a prison warden incorrectly implied that an inmate needed access to a nearly unobtainable prison policy in order to bring a timely administrative appeal, "the Warden's mistake rendered Nunez's administrative remedies effectively unavailable." Id. at 1226. In Sapp v. Kimbrell, 623 F.3d 813 (9th Cir. 2010), we held that where prison officials declined to reach the merits of a particular grievance "for reasons inconsistent with or unsupported by applicable regulations," administrative remedies were "effectively unavailable." Id. at 823-24. In Marella v. Terhune, 568 F.3d 1024 (9th Cir. 2009) (per curiam), we reversed a district court's dismissal of a PLRA case for failure to exhaust because the inmate did not have access to the necessary grievance forms within the prison's time limits for filing a grievance. Id. at 1027-28. We also noted that Marella was not required to exhaust a remedy that he had been reliably informed was not available to him. Id. at 1027.

Albino, 747 F.3d at 1172-73. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino, 747 F.3d at 1168.

////

B. <u>Arguments of the Parties</u>

1. <u>Defendants</u>

Defendants have submitted evidence that they argue shows that plaintiff was aware of and knew how to utilize the administrative remedies process, but that he failed to exhaust that process with respect to the claims at issue in this case. ECF No. 30. In response to plaintiff's claim that he was prevented from using the grievance process, defendants argue that plaintiff failed to follow the proper procedures for filing his grievance and his appeal was properly screened out as untimely because it was not received by the grievance coordinator until after the deadline to submit a grievance. <u>Id.</u> at 8-10; ECF No. 40 at 4.

2. <u>Plaintiff</u>

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), <u>overruled on other grounds</u>, <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." <u>Jacobsen v. Filler</u>, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. <u>Id.</u>

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, though plaintiff has largely complied with the rules of procedure, the court will consider the record before it in its entirety. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff argues that he attempted to file a grievance regarding the August 25, 2010 conduct of defendants Hanks and Betti, but that his appeal was improperly screened out as

6

1  duplicative and untimely. ECF No. 38 at 3-4.  He argues that his appeal was timely because he
2  sent it directly to the warden the day before his deadline to submit an appeal and that the
3  improper screening rendered the administrative remedies process unavailable to him.  Id.

        C.      Discussion

Plaintiff does not argue in opposition to summary judgment that he exhausted his administrative remedies.  ECF No. 38 at 3-4.  Instead, his argument is that he was prevented from exhausting his administrative remedies.  Id.  However, in his verified complaint, plaintiff alleges that he submitted his appeal for Director's level review on November 2, 2010, and received a response dated December 20, 2010.  ECF No. 1.  Inspection of the documentation provided by plaintiff shows that he attempted to send the appeal to the Inmate Appeals Branch, which processes Director's level appeals, with a request that it be processed because it had been improperly screened out.  Id. at 21.  The appeal was rejected because it had been "rejected, withdrawn or cancelled at the institution level."  Id. at 22.  Plaintiff was directed to address the decision with the appeals coordinator if he disagreed with it.  Id.  The response also included a note that advised plaintiff that an appeal that had been cancelled could not be resubmitted, but that he could file a separate appeal regarding the cancelled decision and that the original appeal could only be resubmitted if the appeal of the cancellation was granted.  Id.

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules.").  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones, 549 U.S. at 219.  Under the appeals policy in place at the time, an inmate could not continue on to the next level of appeal until the appeal had been denied or waived at the previous level.  Cal. Code Regs. tit. 15, § 3084.5(c), (d).  Since plaintiff's appeal was not processed at the first level because it was untimely, his attempt to appeal to the Director's level was not proper and did not exhaust his administrative remedies, as demonstrated by the response plaintiff received directing him back to the institutional level.  ECF No. 1 at 22.  It is

////

therefore necessary to determine whether plaintiff's appeal was properly screened out at the institutional level.

The facts as they apply to plaintiff's attempts to exhaust his administrative remedies are largely undisputed. The parties agree that plaintiff was an inmate at High Desert State Prison (HDSP) at all times relevant to the complaint and that between August 25, 2010, and August 25, 2012, the appeals office at HDSP accepted three of plaintiff's appeals for review. Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 30-3) at 2, ¶¶ 1-4; Response to DSUF (ECF No. 39) at 2. None of the three appeals processed for review were related to the allegations in the complaint.[1] DSUF at 2, ¶¶ 5-7; Response to DSUF at 2-4. The parties also agree that plaintiff's last day to submit an appeal was September 16, 2010; that plaintiff mailed an inmate appeal directly to the warden on September 15, 2010; and that the appeal was not received by the appeals coordinator until September 17, 2010. ECF No. 30-2 at 9; DSUF at 2, ¶¶ 8-9; ECF No. 38 at 3; Response to DSUF at 4. They are also in agreement that plaintiff's appeal was screened-out as untimely and duplicative, and that when plaintiff re-submitted his appeal to the appeals coordinator[2] challenging this finding, the determination that the appeal was untimely was upheld. ECF No. 1 at 18; DSUF at 3, ¶¶ 11-14; Response to DSUF at 4-6. It is undisputed that a Director's level response that addressed the allegations in this complaint was never issued. DSUF at 4, ¶¶ 17-18; Response to DSUF at 6-7. The parties' dispute revolves around whether plaintiff was prevented from pursuing his appeal to the Director's level, thus making his administrative remedies unavailable.

According to CDCR policy, appeals submitted at the formal level were to be sent to the

---

[1] Plaintiff argues that appeal HDSP-D-11-00049 involved acts of retaliation alleged in the complaint and that the allegations are similar to those alleged in the complaint. Response to DSUF at 3. However, review of appeal HDSP-D-11-00049 shows that although it does include allegations of retaliation against defendant Betti, the alleged retaliation is not related to the retaliation alleged in the complaint. ECF No. 30-4 at 24-29. Appeal HDSP-D-11-00049 alleges that defendant Betti, along with other non-defendant officers, had plaintiff transferred to another yard in retaliation for what they felt was plaintiff's excessive filing of appeals. Id. at 25.
[2] The parties disagree about what day the appeal was re-submitted, but this dispute is immaterial to resolution of the motion.

8

1  appeals coordinator within the prescribed time limits, Cal. Code Regs. tit. 15, § 3084.2(c) (2009),
2  and appeals could be rejected if they were untimely, id. § 3084.3(c)(6).  The information
3  regarding who appeals were to be submitted to was included on the appeal form plaintiff used to
4  submit the September 15, 2010 appeal.  ECF No. 30-4 at 48.  Plaintiff does not offer any
5  explanation for his decision to send the appeal to the warden instead of the appeals coordinator.
6  ECF No. 38 at 3-4.  He also does not cite to, nor has the court been able to find, any exception in
7  the policy that would have allowed him to bypass the appeals coordinator under the
8  circumstances relevant to this case.[3,4]  Instead, plaintiff argues that his appeal was timely because
9  he mailed it to the warden on September 15, 2010, and that the appeals coordinator's decision that
10 the appeal was untimely made the appeals process unavailable to him.  Id.  He also argues that
11 even if he had mailed his appeal to the appeals coordinator on September 16, 2010, his last day to
12 submit an appeal, it would not have been received by the appeals coordinator until September 17,
13 2010, or later.  Id.

14       Whether an appeal mailed to the appeals coordinator on September 16, 2010, and received
15 September 17, 2010, would be timely is not the issue currently before the court because that is not
16 what plaintiff did in this case.  In this case, plaintiff failed to follow the proper procedures for
17 submitting a grievance because he submitted the grievance to the warden rather than to the
18 appeals coordinator.  As a result, the appeal was not received by the appeals coordinator until
19 September 17, 2010, one day late.  There is no evidence that plaintiff was given incorrect or
20 misleading instructions on how to proceed with his appeal, and in fact the form itself directed
21 plaintiff to submit the appeal to the appeals coordinator.  There is also no evidence that plaintiff
22 was prevented from submitting his appeal to the appeals coordinator within the mandated time

---

[3] It appears that plaintiff may have been attempting to submit the appeal as a citizen's complaint, as it referred to itself as a "citizen's staff complaint" and included the signed statement required by 15 C.C.R. § 3391(d) when making a citizen's complaint.  ECF No. 30-4 at 47-48.  However, the procedure for citizen's complaints, which are to be submitted to the head of the institution where the officer is employed, explicitly states that the process is for use by non-inmates.  Cal. Code Regs. tit. 15, § 3391(b), (c) (2010).

[4] See Cal. Code Regs. tit. 15, § 3084.7 (2009) (Exceptions to the Regular Appeals Process).

9

period. Based on the undisputed facts, plaintiff failed to follow the procedure for submitting appeals by attempting to bypass the appeals coordinator and as a result his appeal was untimely and screened out accordingly. On these facts, the court finds that the appeals process was available to plaintiff and that he was not prevented from pursuing administrative remedies.

        D.     <u>Conclusion</u>

Because plaintiff did not follow the appeals procedure, his appeal was untimely and was properly screened out. Plaintiff therefore did not exhaust his administrative remedies, nor were administrative remedies unavailable to him. Accordingly, the court recommends granting defendants' motion for summary judgment.

        V.     <u>Summary</u>

Inmates are required to follow the prison's procedures for submitting appeals. Plaintiff did not follow those procedures or show that he was given incorrect instructions or prevented from submitting his appeal on time. The undisputed evidence shows that plaintiff's appeal was properly screened out as untimely and that he did not exhaust the appeals process. The motion for summary judgment as to defendants Hanks and Betti should therefore be granted. The motion for summary judgment should be denied as moot as to defendant Statti because defendant Statti has already been dismissed from the case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 30) be granted in part and denied in part as follows:

        a. Denied as moot as to the claims against defendant Statti.

        b. Granted as to the claims against defendants Hanks and Betti.

2. Judgment be entered in favor of defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

objections shall be served and filed within fourteen days after service of the objections.  **Due to exigencies in the court's calendar, no extensions of time will be granted.**  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 29, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE